All right, let's pick up our third case here, United States v. James Harris, Mr. Levin, let's hear from you, sir. Good morning. May it please the Court, my name is Stephen Levine and I'm here on behalf of Mr. James Harris. Today, this Honorable Court has the opportunity to once again interpret the Speedy Trial Act in such a way as to ensure that a criminal defendant does not languish in custody, whether it be federal custody or state custody, resulting from federal involvement. As this Court has previously articulated, the act— With respect to the Speedy Trial Act, I thought your argument was a Barker v. Wingo violation argument. It is, Your Honor, but one of the— If I'm wrong, please correct me, and I may well be, but I thought you were raising the Sixth Amendment constitutional argument as opposed to a Speedy Trial Act violation. Well, we're raising them both, Your Honor, and as part of the Barker v. Wingo analysis, one of the factors, of course, is the length of delay. And our position is that the length of delay in this case was 29 months, not the four months that Judge Quarles found at the district court level. And we're using our interpretation of the Speedy Trial Act with some support to establish that 29— Are you trying to bleed them into each other? That is certainly one way to look at it, Your Honor, but I think we have a strong argument based on the facts of this case, fairness and equity, that support our position that it should be a 29-month— What is fair about requiring the government, in this case the federal government, to hold the bag and be responsible for delay occasions solely by state authority? That doesn't seem very fair to me. If it were solely based on the actions of the state authorities, I would agree, Judge Diaz, that it wouldn't be fair. But I think, first, a factual summary would be helpful before— Well, as far as I understand the facts, the federal authorities really had no involvement in the case during the time period that you want to now attribute to the federal government for purposes of your speedy trial claim. So, I mean, I think clearly it would make sense if the federal authorities were in cahoots with the state right from the get-go, had conducted a joint investigation. I think your equity argument would be a lot stronger there, but there's no evidence in this record that the federal authorities had any interest in your client until after the state authorities decided not to proceed. And I think, Judge Diaz, you've allowed me to segue into a bigger point, that the evidence is really lacking in many respects. I don't know that this Court can make any determinations based on this record. But it was— Go ahead. I'm sorry. I'm just curious. When you cite Woolfolk, in which case the federal government knew, or at least had reason to know, that the state—that the defendant was in custody to answer a federal charge. But what evidence did you—if the evidence is lacking, whose responsibility would that have been? Well, Mr. Harris' counsel below—a different counsel below—but Mr. Harris' counsel below did not put on evidence to persuade Judge Quarles that the state—that the federal government had knowledge or took action in cahoots with the state authorities. Do you have evidence to the contrary at this point? Well, no, Your Honor. I think at a minimum—of course, we're asking—in the brief, we ask that the conviction be vacated. I think at a minimum, however, that this Court certainly has the discretion to send it back for further fact-finding. But why? Why it would be unusual in the extreme, in my experience on the bench, for us to look at a record on appeal, find out that the defendant didn't put in the evidence that he or she was supposed to put in, so we remand it back to give him or her a second chance to make the record he or she should have made in the first place. Well, I think there's a—and thank you for raising that point, Judge Duncan. I think there is an equity argument there as well. In this case, ordinarily, yes, the defendant should be putting on evidence when raising an issue below. It depends on the issue. In this case, the federal government was in possession of the information. They had the knowledge as to whether there were communications between the federal authorities and state authorities, and so it would not be out of bounds for the District Court to have required the federal government to put on evidence addressing whether or not there was involvement by the federal with state authorities. Sui sponte. Well, this would not be the first time—I've appeared before Judge Quarles several times, and Judge Quarles on other occasions has recognized that while as a legal matter, the defense may have the burden, for instance, safety valve issues. I have seen Judge Quarles, sui sponte, require the government to put on evidence about whether a defendant was truthful during a safety valve proffer. Okay, let me just make sure I understand. You do seem to be acknowledging that Harris presented no evidence that he was being held in state custody at the direction of the federal government, correct? There's no way around that, Your Honor. And is there evidence in the record that Ray's testimony would have been—that the absence of Ray's testimony would have resulted in prejudice? Because as I recall, Ray was only going to say that the defendant wasn't present at the time Ray was there. Yes, Your Honor. That's the correct reading of the record. Of course, the prejudice is only one of the four factors under Barker v. Wingo, but I think it is important because I don't know that the brief put in the detail as much—with respect to the factual background, I think this would be helpful. On September 17, 2008, Mr. Harris sold $20 worth of cocaine and was promptly arrested. Nine months later, on June 15, 2009, Mr. Harris' state case was steadied. Not until August of 2009, just a few months later, was Mr. Harris finally released. So Mr. Harris was held in state custody for several months, notwithstanding the fact that his state case had been steadied. It was eight months later, on February 25, 2010, that the state reopened the state, and then Mr. Harris was arrested a few days later, in March of 2010. Four months later, on June 11, 2010, the state no-prossed Mr. Harris' case. This gets back to Judge Diaz's question, is that your recitation, the state did this, the state did that, the state did this, but when we come over to the federal court, you don't dispute the fact that the length of the delay, which is one of the Barker factors, was four months from the time of the federal indictment until the time of trial. That's well within speed trial act limits. I mean, because so much of your recitation seems to be targeted at the state. It does, but I had one more date, and then I'll explain, Your Honor, why. Before you get to that, am I correct that there was a four-month period between the indictment and the trial? Yes, Your Honor, and Your Honor is correct, we're not focusing on the four months as a factor that Mr. Harris would prevail on as one of the factors under Barker's swingo. But the point that Mr. Harris, the fact that Mr. Harris was detained from June 2009 until August 2009, when there was no state charge pending, and the fact that Mr. Harris was detained from June 11, 2010, when his state case was null processed, until September 2010, which was the final date I wanted to bring to the court's attention, the fact that he was detained on those two periods when there was no state action pending that's in the record. But that doesn't answer the question of the fact that the federal government didn't know about this as far as I can tell, that there was no collusion, and it gets again back to Judge Diaz's question, I mean, where are we supposed to find in law a duty on the part of the federal government to monitor every state proceeding? I mean, there must be thousands of people in various stages of state proceedings, and if we were to impose this sort of duty, it would add immeasurably to the burdens of the federal government and make them, and the federal government, while wholly innocent, would be required to answer for the multitudinous acts of a separate sovereign. I just don't, I don't get it. And, Your Honor, Mr. Harris is not asking for such a broad interpretation of the Speedy Trial Act. However, I think Your Honor's phrase captured the essence of one of our arguments, that as far as Your Honor can tell, there was no federal collusion with state authorities. But this record simply is lacking, and that's why, at a minimum, we would request that the case be sent back. But that gets back to Judge Duncan's question, why should we do that when it was incumbent upon your client's lawyer below to make the record in the first instance? Your Honor, I would suggest that it was incumbent upon the federal government, who actually had the evidence. This is not a situation where Mr. Harris should be burdened with the burden of production. But it's his motion. It's his motion. Yes, Your Honor. And there are certain cases where a defendant makes the motion, but the government has to put on evidence. Is this one of them? I would suggest, Your Honor, that it should be. And the government put on evidence, and they didn't present any evidence indicating that they were at all responsible for any of this delay. At that point, wouldn't it be incumbent upon your client's lawyer below to somehow impeach or attack that evidence? Your Honor, if I understood Your Honor's question correctly, yes. I would suggest that the federal government would have had to have put on evidence below. And I don't believe that they did that. I think they proffered. And I don't question the integrity of the AUSA when he proffered, but that's not evidence. And so I would suggest that... I can't believe you're suggesting that it's the government's responsibility to monitor the interactions with the state about the status of prisoners to make the argument for the defendant. No, Your Honor, I'm not suggesting... And I apologize if I suggested that. That's not my intention. My suggestion to this court would be that it's the burden of the federal government to put on an agent or a prosecutor to say there was no collusion. And if there wasn't, that resolves the issue. But collusion was never argued or challenged. There was no evidence presented by Mr. Harris's trial counsel below. There was just no evidence presented other than argument. There was just simply argument that... The question I have is, is there any reason to suspect collusion? Well, I think my... Your Honor, I think the recitation of the factual background does raise some questions. There were several months from June 2009 to August 2009 when Mr. Harris was not pending any state court action when he was still in detention. And there was an additional time period from June 11, 2010, when Mr. Harris's state case was no prosecution, through September 2010. Again, a period where Mr. Harris was not facing a state charge, the charge of no prosecution, he's still in custody. That would, in our opinion, raise some question as to why he was still in custody during those periods. And that's why we believe the federal government should have put on some evidence to state whether or not they had any interaction with the state authorities with respect to those periods of detention. And for the court's benefit, I've been discussing these factual... These dates. They can be found in joint appendix 1013 to 1014 and the ECF docket numbers 97 and 98, where there was an agreement and acknowledgement by the federal government that Mr. Harris, of those 29 months, had spent 18 months in confinement. I do want to address the substantive unreasonableness of the sentence, at least in part now, and I'll address it again in rebuttal. Mr. Harris was found guilty of selling $20 worth of cocaine, for which, had he not been a career offender, he would have received somewhere around two years' confinement. That was not the case. Judge Quarles found that Mr. Harris was a career offender and sentenced him to 210 months. During the sentencing argument, Mr. Harris' counsel made clear that, in addition... May I proceed, Your Honor, to just finish this point and then I'll sit down? The problem you have here in suggesting this is substantively unreasonable is the criminal history here is appalling and all of these offenses, including this one, were committed while the defendant was on probation. He was on probation for attempted second-degree murder. The PSR says he shot a victim multiple times as he begged for his life and shot a female victim as she fled. Then he was convicted of robbery with a deadly weapon and a crime during which he shot a victim in the arm and fired additional rounds before departing. And then the offense of the distributional offense that was the instant offense in this case, all these offenses seem to pile up while he's on probation. How he merited probation on so many different occasions is beyond me, but notwithstanding all of this, the district judge sentences him to the low end of the guideline range and there's no dispute about the guideline's calculations. So how do we arrive at the conclusion that this was substantively unreasonable? I mean, the criminal history is not good. It's not good. I appreciate the generosity of that remark, Your Honor. I will say this briefly and sit down. Judge Quarles, in an earlier argument today, mentioned that Judge Quarles was Prussian in his anticipation of the Harris versus the Florida v. Harris case. Judge Quarles was not so Prussian in this case when Mr. Harris' counsel raised the fact that Mr. Harris was looking at backup time for the violation of probation. Judge Quarles' response was, which was a legitimate response, based on Judge Quarles' experience with the state system, he did not anticipate that that would ever happen. I'm paraphrasing, but I can read it during rebuttal. That was more or less Judge Quarles' expectation. That did not happen. In fact, Mr. Harris received seven additional years. And had Judge Quarles properly anticipated that there would be additional time, as suggested by counsel, then it's very possible Judge Quarles would not have given him this guideline range. Thank you, Your Honor. You've got some time on rebuttal, sir. Mr. Hanlon? May it please the Court. My name is Michael Hanlon, appearing on behalf of the United States today. The government does ask that the Court affirm the convictions and the sentence imposed by the District Court in this case. I'll go through the issues raised in the defense one at a time and obviously take any particular questions the Court has. First of all, Mr. Harris seeks reversal of the conviction in this case on the basis of his motion to dismiss, citing both the constitutional Sixth Amendment speedy trial right and the Fifth Amendment's pre-indictment delay right. The Court's colloquy with Mr. Levine was more focused on the Sixth Amendment issues, and I'll simply sum up to say that in this case, Judge Quarles was correct to determine a period of delay of four months from the date of the federal charge until trial. There is simply no case law, at least applicable case law, for the proposition that the 29th month period of delay can be attributed to the federal government. The best evidence that the defense has of any collusion, and they cite the Woolfolk or Woolfolk case for that proposition, the idea that a collusion can establish a longer period is the idea that the government in this case, I, engaged in some sort of shenanigans in conjunction with the State's Attorney's Office to keep Mr. Harris locked up for an extended period of time for whatever reason. And the problem with that argument, Your Honors, is that it collapses when we consider the for much of the period that the federal government was allegedly partnered up in this case. From Mr. Levine, I think, cited the period June through September 2010 as being a relevant consideration. From 2010 until February of 2011, Mr. Harris is apparently on the street, which means that whatever shenanigans we were doing, they apparently were not very effective. And that really is proof positive of the fact that there were no attempts, no collusion to keep Mr. Harris locked up and to delay the trial. There was no reason for such a delay, no motive for such a delay, no benefit to law enforcement for such a delay. There wasn't any. Are there some points that we neglected to raise in our earlier discussion with Mr. Levine that you would like, some things we overlooked here? Nothing, I see, Your Honor. On that issue, unless the Court has questions for me, I'll move on briefly to the other issues. The Court acted within its discretion on the second issue, the Rule 608B issue, and excluded any cross-examination of the police officers based on their... I think we understand that. Understood, Your Honor. You don't want a trial within a trial. Understood, Your Honor. And with respect to the sentencing, Your Honor, the government believes that the Court imposed a reasonable sentence in light of the criminal record. I have substantial time left over, but unless the Court has questions, I'm happy to submit. This issue of the backup time, which I don't know that I focused on when I considered this case. What do you say? I mean, is that a relevant circumstance that the District Judge should have considered  I don't think it is, Your Honor. Judge Quarles mentioned the backup time issue at page 999 of the Joint Appendix, and it was in response, I believe, to a comment from Mr. Levine about the possibility of backup time, and Judge Quarles' comments, if memory serves, were something to the effect of that Without intending to criticize the Circuit Court for Baltimore City or state courts, in his experience, both as a federal and state judge, it was often the case that a long federal sentence would simply result in concurrent backup time, if any, from the state. He was by no stretch of the imagination certain on that. I think it reads far too much in the record to suggest that his imposition of the 210 month sentence was determined by that belief. He wasn't sure about it. And frankly, I think it would be a problem in our application and review of sentencing to suggest that a federal sentence can be retroactively declared unreasonable because a state judge later on does something that's a little bit unexpected. It was a colloquy. It was not determinative of the sentence. And frankly, Judge Quarles was speaking from a lot of experience. I think it was a reasonable belief, but I don't think it was one that mattered. All right. Thank you, Your Honors. I'll submit on that. Thank you. Thank you. Mr. Levine? Thank you. To continue on the point with respect to the colloquy between counsel below and Judge Quarles at sentencing, I would like to just quote page 999 of the joint appendix. Mr. Harris is facing backup. This is from counsel. Mr. Harris is facing backup time. He's 28 years old. And regardless of the sentence that he receives today, he's looking at a lot of time, whether he's looking at 120 months today or 180 months today or 210 months. That's a lot of time on its own. And then there is the backup time that I know the Court is familiar with. And Judge Quarles responded, well, again, without any attempt or intent to criticize the state system, quite often in these matters where there's a federal conviction and state backup time and there's an opportunity for the state to essentially do a book clearing so that there is, in effect, no real backup time. In effect, there was real backup time, seven years that Mr. Harris received. And so in light of that, the sentence of 210 months plus an additional seven years, when one looks at this offense, the seriousness of this offense, two vials of crack cocaine worth $20, resulting in an additional 15 years because Mr. Harris committed two violent offenses when he was 15 years old and 17 years old. It's a great deal of time and I would argue, substantively, an unreasonable sentence. With respect to the Speedy Trial Act issue and the 29-month delay, I would close by arguing that when a citizen's liberty is restrained as a result of federal action, or in this case, potential federal action, arising out of the facts that led the state to arrest the citizen, then the Speedy Trial Act's purpose is met only if that event begins on the 30-day clock for the government to obtain an indictment. In other words, the purpose of the Speedy Trial Act would be circumvented if we didn't start that clock at the appropriate time, which goes back when Mr. Harris was in state custody. And on this record, I don't know that this Court... Thank you, sir. Thank you, Your Honor. I see you're court appointed as well, Mr. Levine. I want to express the thanks of the Court for the diligent representation you've given your client. Thank you. I would like to come down and greet you, and then we'll move into...
judges: J. Harvie Wilkinson III, Allyson K. Duncan, Albert Diaz